# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **Crim. No. GLR-17-0223** |
| **TERRELL PLUMMER** | * | |

## DEFENDANT TERRELL PLUMMER'S
## CONSOLIDATED MOTIONS IN LIMINE

**JAMES WYDA**
**Federal Public Defender**
**for the District of Maryland**

**NED SMOCK**
**SHARI SILVER DERROW**
**Assistant Federal Public Defenders**
**Office of the Federal Public Defender**
**100 South Charles Street**
**Tower II, 9th Floor**
**Baltimore, Maryland 21201**
**Phone: (410) 962-3962**
**Fax: (410) 962-0872**

i

# TABLE OF CONTENTS

***DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #1:***
MOTION TO PERMIT INDIVIDUAL DEFENDANTS TO EXERCISE ADDITIONAL
INDEPENDENT PEREMPTORY CHALLENGES DURING JURY SELECTION……………1

***DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #2:***
MOTION TO PRECLUDE PURPORTED COCONSPIRATOR STATEMENTS…………...….3

***DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #3:***
MOTION TO PRECLUDE USE OF RAP VIDEOS AND LYRICS…………………...…….5

***DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #4:***
MOTION TO DISCLOSE ALL BENEFITS TO COOPERATORS AND INFORMANTS……..9

***DEFENDANT PLUMMER'S MOTION IN LIMINE #5:***
MOTION TO BAR TESTIMONY OF CLIENT OF HARRY McKNETT
BASED UPON CONFLICT OF INTEREST…………………………………………………11

***DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #6:***
MOTION TO EXCLUDE PREJUDICIAL AND IRRELEVANT
AUTOPSY PHOTOS AND 911 CALLS…………………………...………………………13

***DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #7:***
MOTION TO EXCLUDE EVIDENCE RELATED TO MURDER OF NEIL BROWN……….14

***DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #8:***
MOTION TO EXCLUDE EVIDENCE RELATED TO
UNTIMELY EXPERT DISCLOSURES……………………………...…………………17

Mr. Terrell Plummer, by and through his undersigned counsel, hereby submits his consolidated motions in limine for trial which is scheduled to begin on November 5, 2018. In addition, Mr. Plummer moves to adopt any and all motions in limine filed by codefendants in this case.

### *DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #1:*
**MOTION TO PERMIT INDIVIDUAL DEFENDANTS TO EXERCISE
ADDITIONAL INDEPENDENT PEREMPTORY CHALLENGES
DURING JURY SELECTION**

Mr. Plummer respectfully requests that this Court grant the defendants additional peremptory challenges and allow each defendant to exercise their peremptory challenges separately.

Federal Rule of Criminal Procedure 24(b) provides that the defendant or defendants jointly have 10 peremptory challenges when the defendant is charged with a crime punishable by imprisonment of more than one year. The rule also grants the trial judge discretion to "allow additional peremptory challenges to multiple defendants, and may allow the defendants to exercise those challenges separately or jointly." Fed. R. Crim. P. 24(b).

Mr. Plummer asks that each defendant be granted six peremptory challenges to be used independently. All remaining defendants are charged in this case with Conspiracy to Commit Racketeering Acts, in violation of 18 U.S.C. § 1962(d), and Conspiracy to Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 846 and 841. Mr. Plummer alone faces three separate counts of Violent Crimes in Aid of Racketeering, in violation of 18 U.S.C. § 1959. There are also several counts of Distribution and Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841, against individual defendants. The government is expected to introduce evidence at trial in an effort to link Mr. Beasley and Mr. Mosley to homicides that Mr. Plummer is not alleged to have taken any part in. But Mr. Plummer

1

alone faces the possibility of a mandatory life sentence should he be convicted of the charge of Murder in Aid of Racketeering alleged in Count Three.

Because each defendant faces significant independent evidence and charges, defendants will likely have differing defense theories, some of which may be inconsistent with one another. Mr. Plummer in particular faces the most serious charges in this case with a possible mandatory life sentence should he be convicted.  Mr. Plummer should not be required to share ten peremptory strikes with four other defendants, functionally leaving him with two peremptory strikes. Peremptory challenges are exercised strategically to strike prospective jurors based on the evidence and case theories the parties foresee playing out at trial.  Requiring the defendants to share their use of peremptory challenges would unfairly reduce the effectiveness of the defense's challenges.  Allowing each defendant to receive six peremptory challenges to be exercised independently would place each defendant on equal footing with the government's six peremptory challenges.

## *DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #2*:
## MOTION TO PRECLUDE PURPORTED COCONSPIRATOR STATEMENTS

The government has not provided notice of its intention to introduce alleged conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E) at Mr. Plummer's trial.  Rule 801(d)(2)(E) permits introduction of a statement when it is offered against an opposing party and "was made by the party's coconspirator during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  Should the government seek to offer any alleged coconspirator statements, Mr. Plummer will object.

The proper procedure for admission of alleged conspirator's statements was set forth in *Bourjaily v United States*, 483 U.S. 171 (1987).  The Court held that "before admitting a coconspirator's statement . . . [t]here must be evidence that there was a conspiracy involving the declarant and the non-offering party, and that the statement was made 'in the course of and in furtherance of the conspiracy.'"  The proponent must satisfy the Court by a preponderance of evidence.  *Id.* at 175.  Moreover, as "hearsay statements are presumptively unreliable," for such statements to be admissible, there must be some independent corroborating evidence of the defendant's participation in the conspiracy.  *Id.* at 179; *see also United States v. Daly*, 842 F.2d 1380, 1386 (2d Cir.), *cert. denied*, 488 U.S. 821 (1988); *United States v. Clark*, 18 F.3d 1337, 1341-42 (6th Cir.) ("Since *Bourjaily*, all circuits addressing the issue have explicitly held absent some independent, corroborating evidence of defendant's knowledge of and participation in the conspiracy, the out-of-court statements remain inadmissible.") (*citing cases*), *cert. denied*, 115 S. Ct. 152 (1994); *United States v. Bentvena*, 319 F.2d 916, 948-49 (2d Cir.), *cert. denied*, 375 U.S. 940 (1963).  *United States v. Tellier*, 83 F.3d 578, 581 (2d Cir. 1996).

Prior to the admission of coconspirators' statements, the trial court must find that (1) a conspiracy existed, (2) that the coconspirator and the defendant whom the statements of the

coconspirators are offered against where members of the same conspiracy and (3) that the statements were made in furtherance of the conspiracy. *United States v. Gantt*, 617 F.2d 831 (1980); *United States v. Weisz*, 718 F.2d 413 (D.C. Cir. 1983). Any such finding must be supported by substantial evidence independent of the hearsay statements themselves. *Gantt*, 617 F.2d at 844; *United States v. Jackson*, 627 F.2d 1198 (D.C. Cir. 1980); *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) (*per curiam*) (*en banc*), *cert. denied*, 431 U.S. 933 (1977).

Although a pre-trial evidentiary hearing is not required, the defense suggests that one would be appropriate here to avoid the need to address the issue repeatedly before the jury. S*ee, e.g.*, *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (suggesting that a pre-trial determination is appropriate). Without a pre-trial hearing on the admission of the statements, a tremendous amount of in-trial time will be used to resolve these issues, causing interruptions in the presentation of evidence to the jury.

### *DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #3*:
### MOTION TO PRECLUDE USE OF RAP VIDEOS AND LYRICS

Although the government has yet to disclose an exhibit list, it has provided notice to the defense that it intends to introduce evidence obtained from Facebook and Instagram accounts linked to the defendants in this case.  The government has provided defense counsel with copies of videos and images it expects to seek to introduce from those accounts.  Included within that disclosure are several videos involving rap music.  Some are amateur rap videos by an uncharged individual that appear to include some of the charged defendants in this case in the background.  Others are videos of defendants in this case either rapping or singing along to rap songs that are being played on stereo systems.  These videos contain extensive inadmissible material, including hearsay and irrelevant material.  Even to the extent the videos may contain relevant and otherwise admissible evidence, the prejudice they would cause the defendants far outweigh their probative value and they should be excluded pursuant to Federal Rule of Evidence 403.

The videos are inadmissible for several reasons.  As a threshold matter, as far as the defense is aware, none of these videos includes lyrics or videos actually written or produced by any of the charged defendants in this matter.  As far as the defense is aware, Mr. Plummer himself is not depicted in any of the videos involving rap music.  For these reasons alone, they are irrelevant and inadmissible.  "[C]ircuit courts have admonished trial judges against admitting rap videos or lyrics with merely a tenuous connection to the defendant or issues in the case." *United States v. Herron*, 2014 WL 1871909 (E.D.N.Y. May 8, 2014) (*citing United States v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011) (rap music video did not feature the defendant nor was evidence introduced that defendant had authored the lyrics or adopted the views expressed in the video)); *see also State v. Skinner*, 218 N.J. 496, 521, 95 A.3d 236, 251 (2014) (rap lyrics are relevant to a disputed issue of fact only if they "specifically relate" to that issue).  Those instances where rap evidence has been

admitted have required the material be tethered to the individual defendant – lyrics the defendant himself wrote about the crime alleged. *See, e.g.*, *Holmes v. State*, 306 P.3d 415, 418 (Nev. 2013) (Defendant's own lyric about his robbing); *Herron*, 2014 WL 1871909 at *2–*3 (show Defendant identifying as a member of the Gowanus-based Murderous Mad Dogs, conversing with alleged gang associates, firing weapons, vowing retaliation after an alleged associate is shot by a rival, and bragging that other people will do his bidding); *United States v. Wilson*, 493 F.Supp.2d 484, 488–89 (E.D.N.Y. 2006) (Defendant's own rap lyrics about the crime).  None of that is present here.

Second, statements made in the videos by the subjects depicted therein are hearsay.  Before any portion of the videos containing any such statement may be admitted, the government must establish that what would otherwise be hearsay is nevertheless admissible.

Third, courts must be extraordinarily careful in addressing the admissibility of rap videos and lyrics in general.  Like other forms of music, rap music and rap videos are not narrative "documentaries" that can or should be taken literally.  As the Massachusetts Supreme Court has explained: "We discern no reason why rap music lyrics, unlike any other musical form, should be singled out and viewed sui generis as literal statements of fact or intent."  *Commonwealth v. Gray*, 463 Mass. 731, 755, 978 N.E.2d 543, 561 (2012).

> Courts do not treat lyricists of other mainstream musical genres similarly, even those who live an outlaw lifestyle or promote an outlaw image ... are not presumed to be making statements about their beliefs, intent or their conduct.... [W]ith respect to country music, we do not likely believe that Johnny Cash shot a man simply to watch him die. With respect to reggae, we do not generally take to heart Bob Marley's proclamation: "I shot the sheriff, but I did not shoot the deputy....".

*Id.*, *quoting* Dennis, *Poetic (In)justice?  Rap Music Lyrics as Art, Life, and Criminal Evidence*, 31 Colum. J.L. & Arts, 1, 4, 15 (2007) ("gangsta" is a subgenre of rap that "purports to reflect life in the inner city," draws on devices such as metaphor, braggadocio, and exaggeration

for effect, and uses words that may be offensive and prone to misinterpretation by jurors and courts unfamiliar with rap).  Rap lyrics typically employ "metaphor, exaggeration, and other artistic devices, including "exaggerated and invented boasts of criminal acts."  Dennis at 22.[1]

The concern is that any such video will be interpreted literally – and incorrectly – by the jury as admissions of criminal conduct.  *See Skinner*, 218 N.J. at 521, 95 A.3d at 251 ("[t]he difficulty in identifying probative value in fictional or other forms of artistic self-expressive endeavors is that one cannot presume that, simply because an author has chosen to write about certain topics, he or she has acted in accordance with those views").  Before any portion of any video may be admitted, the government must demonstrate that it tends to make a pertinent fact "more or less probable than it would be without" that portion of video.  Fed. R. Evid. 401.  Because the videos are not literal, autobiographical narrative "documentaries," they do not tend to make any pertinent fact more probable than otherwise, even if they address actual events.  Therefore the videos are not relevant, and not admissible.[2]  The defense is not aware of any video containing lyrics written by a defendant in this case.  The irrelevance and prejudicial impact is even more stark in those videos identified by the government in which the defendants appear to be simply singing the lyrics to rap songs that are playing on a stereo system.  Such evidence is entirely irrelevant and – to the extent those lyrics describe criminal conduct or include offensive content – extremely prejudicial.  None of the videos involving rap music should be admitted at trial.

---

[1]    For example, the statements by the rapper Ice-T in his song "Cop Killer" – i.e., "I'm 'bout to bust some shots off, I'm about to dust some cops off," and "I'm a . . . cop killer," would not be relevant in a prosecution of Ice-T for the shooting a particular officer.  Ice-T (Tracy Marrow) today stars as a police detective in NBC's long-running show, Law and Order: Special Victims Unit, and in commercials for, inter alia, GEICO and Boost Mobile.

[2]    To the extent the government wishes to introduce the videos for the purpose of establishing a connection between defendants in this case or to establish some other admissible fact, they may be permitted to do so by showing still images from a video.

If the Court is inclined to consider admitting any video involving rap lyrics, a hearing should be held.  As noted, the government has provided defendants with a number of videos, but has not identified any portions of those videos that it intends to offer in evidence, making it impossible at this time for defendants to contest, or the Court to determine, the relevance of any such evidence, whether any such relevance is outweighed by the danger of unfair prejudice, and whether any hearsay statements in the videos are admissible.  In a hearing, the government would be required to identify the portions of the videos it intends to offer in evidence and, with respect to each, to proffer specific facts demonstrating that the video material is factual and autobiographical.  Where it meets that burden, the government would then be required to articulate a specific theory of relevance tying each portion of video it intends to offer in evidence to the facts of this case.  Where the Court determines, based on this showing, that material in the videos is relevant, the parties and the Court may then address whether the probative value of any such evidence outweighs the potential for unfair prejudice.  Finally, the parties and the Court would address the question whether statements made in any video, otherwise admissible under Rules 401 and 403, is hearsay and, if it is, whether it is admissible under any hearsay exception.

### *DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #4:*
**MOTION TO DISCLOSE ALL BENEFITS**
**TO COOPERATORS AND INFORMANTS**

The defense anticipates that the United States will call one or more witnesses who have received or can expect to receive some benefit for the information or testimony they have provided related to this case.  Because there is little, if any, physical evidence connecting Mr. Plummer to the homicide that serves as the basis of the Violent Crime in Aid of Racketeering counts in this case, the defense anticipates that this cooperator and informant testimony will be a linchpin of the government's case.

Although the government is no doubt aware of its responsibility to provide the defense with records of any benefits or promises made to these witnesses, case agents sometimes fail to advise government trial counsel of all relevant information related to the agreements made with these witnesses and any payments or benefits to or on behalf of the witnesses or their family members.  As a result, even the most scrupulous government trial counsel may inadvertently fail to provide critical evidence to the defense simply because he or she is unaware of it.  To be clear, pursuant to Fed. R. Crim. P. 16, *United States v. Giglio*, 405 U.S. 150 (1972), *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*,  360 U.S. 264 (1959), Mr. Plummer respectfully requests that the Court order the government to disclose the following information:

1. The Confidential Source Establishment Report or any similar document wherein the terms of the relationship between the government and the informant; witness or cooperating witness is memorialized;

2. Any informant agreement outlining the type of cooperation expected from the informant, witness, or cooperating witness;

3. Any informant conduct agreement detailing the rules the informant must follow while working for law enforcement;

4. Any debriefing reports or statements taken from the informant;

5. Any and all promises of payment written or oral made to such persons or their family members as part of this or any other case in which they have provided information;

6. Records of payment made to such persons or their family members as part of this or any other case in which they have provided information;

7. All promises of immunity, leniency, preferential treatment or other inducements made to such persons or any member of their family as part of this case or any other case in which they have provided information;

8. All writings or memoranda which contain any of the promises of remuneration, leniency, immunity, preferential treatment or inducements made to such individuals or their family members;

9. Any plea agreement entered into by a witness in this matter or any other matter in which the witness may expect leniency related to their testimony in his case;

10. Any record or payment of local, state, or federal funds made to such persons or their family members related to this or any other case;

11. Any and all receipts received by the government to support the claim by the informant for reimbursement of alleged expenditures and costs associated with his or her cooperation;

12. A total of the amount paid to the informant on this case and all other cases since they began acting as an informant;

13. The tax records of the informant since they began receiving funds from the federal government for reimbursement or services rendered;

14. All information regarding any such person's prior testimony in this or any other proceeding in which they have acted as a witness and/or informant;

15. All evidence of any witness' psychiatric treatment, if any, or of any addiction or propensity to use or abuse alcohol or controlled substances; and

16. All evidence of any instance of a witness' dishonesty in any interaction with law enforcement officers or in sworn testimony.

### *DEFENDANT PLUMMER'S MOTION IN LIMINE #5:*
## MOTION TO BAR TESTIMONY OF CLIENT OF HARRY McKNETT
## BASED UPON CONFLICT OF INTEREST

Defense counsel for Mr. Plummer recently learned that CJA appointed counsel Harry McKnett withdrew from his representation of defendant Keith Wilson based upon a reported conflict of interest.  *See* Docket No. 369.  Mr. Wilson pled guilty soon after new counsel was appointed.  The defense has learned that the basis for the conflict of interest is that Mr. McKnett not only represented Mr. Wilson, but that he also represented a government witness when that witness was subpoenaed to testify in the grand jury as the government was obtaining an indictment against *these defendants*.  It is unclear why Mr. McKnett took on representation of Mr. Wilson under the circumstances and why this clear conflict of interest was only brought to the Court's attention well over one year into Mr. McKnett's representation of Mr. Wilson as the trial date approached.

The defense has serious concerns.  During his representation of Mr. Wilson, Mr. McKnett participated in confidential joint defense meetings with defense counsel for all remaining defendants.  Counsel for Mr. Plummer – and presumably counsel for the other defendants – were unaware at the time that Mr. McKnett represented a government witness in this case.  It is unclear the extent to which Mr. McKnett's involvement with that witness continued after the grand jury appearance.

The defense has learned that the government plans to call Mr. McKnett's client – the grand jury witness – at trial in this matter.  The defense moves to bar the testimony of that witness based on confidentiality concerns and the appearance of impropriety raised by this dual representation.  At a minimum, the defense requests a hearing to explore the issues raised by this clear conflict of interest and how it might impact the testimony of the witness.  There are any number of concerns

about permitting this witness to testify against the defendants in this case when the witness has been represented *in this case* by an attorney for one of the defendants *in this case*.  Most obviously, if the witness is aware of information conveyed to Mr. McKnett during a confidential joint defense meeting, that witness' testimony would be compromised irreparably.  The government should not be permitted to call Mr. McKnett's client as a witness in this trial.

### *DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #6:*
**MOTION TO EXCLUDE PREJUDICIAL AND IRRELEVANT AUTOPSY PHOTOS AND 911 CALLS**

The government has turned over to the defense in discovery autopsy photos of victim McKenzie Elliott and 911 calls involving citizens calling to report that Ms. Elliott had been shot. The defense will object to admission of this evidence at trial.

In *Rivers v. United States*, 270 F.2d 435, 437–38 (9th Cir. 1959), the Ninth Circuit explained the rule regarding the admissibility of photographs that depict homicide victims:

> Such photographs should be excluded where their principal effect would be to inflame the jurors against the defendant because of the horror of the crime; on the other hand, if they have a probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, they are admissible, and the resolution of this question is primarily for the trial court in the exercise of its discretion.

*Id.* (quoting *People v. Chavez*, 50 Cal. 2d 778 (1958)).

It should go without saying that autopsy photographs of the three-year-old victim are inflammatory in nature, as are telephone calls in which witnesses are reporting the shooting.  Mr. Plummer will move to exclude photographs or recordings that have no probative value with respect to a fact in issue in this case.  Further, even to the extent the photos or recordings have any probative value, they must be excluded if their probative value is outweighed by the danger of prejudice to Mr. Plummer.  Fed. R. Evid. 403.

### DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #7:
### MOTION TO EXCLUDE EVIDENCE
### RELATED TO MURDER OF NEIL BROWN

The government recently notified the defense of its intent to introduce evidence at trial related to the July 19, 2016 murder of Neil Brown. This homicide is not charged as a substantive count in the third superseding indictment which was filed this month on October 2, 2018. Nor is the homicide listed as an overt act allegedly committed in furtherance of the racketeering conspiracy charged in Count One of the third superseding indictment. Indeed, the homicide is not mentioned anywhere in the indictment. The defense has very little information about the incident and insufficient time to prepare to confront the allegations. The Court should exclude any such evidence as untimely and unfairly prejudicial.

Although this case was indicted nearly a year and a half ago, the government only notified defense counsel of its intent to introduce evidence related to the murder of Mr. Brown about two months ago, and its first discovery production related to the alleged murder was on or about September 18, 2018, less than two months before trial. That production consisted of just over 100 pages and did not indicate who the government would claim committed this act, the circumstances surrounding the murder, or how it was purportedly related to the charged racketeering conspiracy. In response to defense inquiries, last week counsel for the United States orally informed defense counsel of its theory about who committed the murder for the first time. The government does not contend that Mr. Plummer committed the homicide but apparently contends that it was somehow related to the alleged racketeering conspiracy charged in Count One.

With less than a month remaining before trial, the defense does not have adequate time to investigate and prepare a defense related to the alleged murder, particularly since it has so little information. The defense does not have a sense based on what little discovery it has who the

14

witnesses are who would need to be interviewed, let alone the time to perform that work. A postponement of the trial date is impractical and unworkable and, in any event, would be patently unfair in light of the fact that the trial was scheduled nearly a year ago, the government has had more than adequate time to investigate the July 19, 2016 murder and determine whether or not to introduce evidence of the murder at trial, and Mr. Plummer has been detained for about a year and a half awaiting trial. The government should not be permitted to add evidence of an entirely new homicide to this case on the eve of trial.

The late disclosure is especially damaging to Mr. Plummer's ability to prepare for trial because more late disclosures related to the alleged murder are bound to be produced in the coming few weeks before trial. Indeed, on October 4, 2018, the government provided a supplemental expert disclosure, in which it indicated its intent to call a fingerprint examiner to testify about fingerprint evidence allegedly recovered from the July 19, 2016 crime scene.[3] According to the government, the fingerprint examiner will testify that fingerprints recovered from the scene match "known exemplars" of an unindicted coconspirator. Although the government states in its disclosure letter that "bench notes, raw data, and appurtenant materials" will be produced, those materials have not yet been provided. Thus, even assuming the defense could retain its own fingerprint examiner less than one month before trial is scheduled to begin, we do not currently have the ability to do so. The defense has no means of testing or challenging the government's conclusions, and it is unclear when we will have the necessary information to do so. *Cf. United States v. Dorsey*, 45 F.3d 809, 816 (4th Cir. 1995) ("[I]t is not an abuse of discretion for a trial

---

[3]    The Court should exclude the fingerprint examiner's testimony for the reasons outlined in the motion in limine to exclude certain expert testimony. The expert disclosure is untimely, fails to comply with the Court's previous scheduling Order, and prevents Mr. Plummer from effectively preparing for trial.

court to disallow expert testimony where a late proffer of evidence by the defense substantially prejudices the government in its ability to find its own expert and conduct similar testing.").

The defense is already faced with the daunting prospect of learning for the first time the identities and full previous statements of the witnesses against him just one week before the trial begins and scrambling to perform related investigation and preparation in the days prior to trial. The government cannot, mere weeks before a seven-week trial is scheduled to begin, state that it is going to introduce evidence of a murder about which it has been aware for more than two years, since prior to the issuance of any of the four iterations of the indictment in this case.  The Court should exclude any evidence related to the July 19, 2016 murder.

### *DEFENDANT TERRELL PLUMMER'S MOTION IN LIMINE #8:*
### MOTION TO EXCLUDE EVIDENCE
### RELATED TO UNTIMELY EXPERT DISCLOSURES

A month before trial, on October 4, 2018, the government provided notice of its intent to call firearm examiner Kevin Beardsley to testify in the area of gunshot residue analysis and examination in connection with the August 1, 2014 murder of McKenzie Elliott.  The government also provided notice of its intent to call fingerprint examiner Sean Dorr to testify regarding the collection and examination of fingerprints allegedly recovered from the crime scene associated with the July 19, 2016 murder of Mr. Brown.  The expert disclosures are untimely, fail to comply with the Court's previous order regarding expert disclosures, and prevent the defense from effectively preparing for trial.  The testimony of Mr. Beardsley and Mr. Dorr should therefore be excluded. [4]

As the Court is aware, during a conference call with the Court on April 23, 2018, the defense requested that the Court set a deadline for the government's expert disclosures.  The Court agreed to do so, stating that it would set a deadline of May 18, 2018 for "complex" experts (e.g, bullet trajectory analysis) and that the parties should confer to set another deadline for "noncomplex" experts (e.g., cell site, fingerprint, DNA).  The parties subsequently conferred and agreed on a date of July 2, 2018 for the government's remaining expert disclosures.  On May 21, 2018, the government indicated its intent to call examiner Gregory Klees as its one "complex"

---

[4]     The government's October 4, 2018 correspondence also indicates that the government will call different fingerprint and DNA examiners than originally disclosed to provide "negative" fingerprint and DNA testimony.  Because the substance of the testimony will be basically the same as the testimony previously disclosed, the defense does not object to these purported experts on timeliness grounds.  We continue to maintain, however, for the reasons set forth in our previously filed *Daubert* motion, that the "negative" DNA and fingerprint testimony should be excluded pursuant to Rule 702 of the Federal Rules of Evidence and the Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 539 (1993).

expert.  On July 2, 2018, the government provided its remaining "noncomplex" expert disclosures, indicating its intent to call various employees with the Office of the Chief Medical Examiner, Baltimore Police Department, and certain federal agencies as expert witnesses.

These new expert notices come over three months after the expert disclosure deadline.  The government has not proffered any reason or explanation for its failure to timely disclose Mr. Beardsley and Mr. Dorr.  Nor is there any appropriate justification for this failure.  Mr. Dorr's testimony concerns an event from *more than two years ago*.  The government has had ample time to investigate this incident, decide what relevance, if any, it has to the charged conspiracy, and determine what expert(s) it wishes to call to testify about this matter.  As to Mr. Beardsley, the government has been investigating the August 1, 2014 shooting for more than *four years*, and has had more than a year since this case was indicted in April 2017 to determine what expert testimony it intends to introduce.  The fact that the government previously produced Mr. Beardsley's reports is of no moment.  By omitting Mr. Beardsley from its July 2, 2018 expert disclosure, the government communicated that it does *not* intend to call this witness.  The government cannot now, with a month to go before trial, supplement its expert disclosures.  The Court set a deadline for expert disclosures to avoid precisely this scenario.  Accordingly, the Court should exclude Mr. Beardsley's and Mr. Dorr's testimony at trial.

Respectfully submitted,

JAMES WYDA
Federal Public Defender
for the District of Maryland

_____/s/_____
NED SMOCK
SHARI SILVER DERROW
Assistant Federal Public Defenders
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, Maryland 21201
Phone: (410) 962-3962
Fax: (410) 962-0872
Email:  Ned_Smock@fd.org
Shari_Derrow@fd.org