FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 NOV -2  PM 4: 15

CLERK'S OFFICE
AT BALTIMORE

BY_____
DEPUTY



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

Robert K. Hur
*United States Attorney*

David Metcalf
*Assistant United States Attorney*

36 South Charles Street
Fourth Floor
Baltimore, Maryland
21201

*DIRECT: 410-209-4823*
*MAIN: 410- 209-4800*
*FAX: 410-962-3124*
*TTY/TDD: 410-962-4462*
*David.Metcalf@usdoj.gov*

November 1, 2018

**BY EMAIL**
Ned Smock, Esquire
Shari Derrow, Esquire
Assistant Federal Public Defender
100 South Charles Street, Tower II, 9th Floor
Baltimore, MD  21201

RE: <u>United States v. Terrell Plummer</u>: Criminal No. GLR-17-223

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement that has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. The terms of the agreement are as follows:

### Offense of Conviction

1.      Mr. Plummer agrees to plead guilty to Count One of the Third Superseding Indictment, in which he is charged with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

### Elements of the Offense

2.      The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove beyond a reasonable doubt if the case went to trial, are as follows:

<u>Count One: Racketeering Conspiracy, 18 U.S.C. § 1962(d)</u>

That from in or about 2013 continuing until on or about the date of the Third Superseding Indictment, in the District of Maryland,

a. an enterprise existed as alleged in the Third Superseding Indictment;

b. the enterprise affected interstate or foreign commerce;

c. the Defendant was associated with or employed by the enterprise; and

d. the Defendant knowingly and willfully conspired with one or more persons to conduct and participate in the affairs of the enterprise through a pattern of racketeering activity.

All events occurred in the District of Maryland.

## Penalties

3.      The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows:

**Count One**: life imprisonment, a $250,000 fine, and a five-year term of supervised release.

The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013 for each count of conviction, which will be due and should be paid at or before the time of sentencing. The Court may also order the Defendant to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.

## Waiver of Rights

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a. If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree

unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that the presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights. The Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of this case. Any statements that the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney and the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing

Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998.  The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the statement of facts contained in Attachment "A," which summarizes the facts that this Office would prove beyond a reasonable doubt.  The parties agree that these are not all of the facts that would be proved by this Office if this case proceeded to trial.

### Advisory Guidelines Stipulation

7.      This Office and the Defendant understand, agree and stipulate to the following applicable sentencing guidelines factors.

### Count One (Conspiracy to Engage in a Racketeering Enterprise)

8.      The parties agree and stipulate that pursuant to U.S.S.G. § 2E1.1(a)(2), the offense level for racketeering conspiracy is the greater of offense level 19 or the offense level applicable to the underlying racketeering activity

The parties agree and stipulate that pursuant to U.S.S.G. § 1B1.3, the underlying racketeering activities in this case involve acts, committed, aided, abetted, counseled, commanded, induced, or willfully caused by the Defendant, as well as all those acts reasonably foreseeable to him in furtherance of the jointly undertaken criminal enterprise, and include, among others:

      i.      Murder in Aid of Racketeering Activity, in violation of Title 18 of the United States Code Section 1959(a)

      ii.      Conspiracy to distribute and possess with the intent to distribute heroin and cocaine base, in violation of Title 21 of the United States Code Section 846, and

      iii.      Distribution and possession with intent to distribute cocaine base, in violation of Title 21 of the United States Code Section 841.

Pursuant to U.S.S.G. § 2E1.1 n.1, each underlying racketeering offense is treated as a separate count of conviction.

With respect to the Murder in Aid of Racketeering Activity, the base offense level is **43** under United States Sentencing Guidelines Section 2E1.3(a)(2).

With respect to the conspiracy to distribute and possess with intent to distribute heroin and cocaine base, the base offense level is **30** pursuant to United States Sentencing Guidelines

Section 2D1.1(c)(5). There is a **2-level increase** in the Defendant's offense level pursuant to U.S.S.G. 2D1.1(b)(12) because he maintained a premise for the purpose of distributing a controlled substance. However, the racketeering activity involving the conspiracy to distribute controlled substances and distribution and possession with intent to distribute controlled substances (Count One); and the conspiracy to distribute controlled substances (Count Two); are grouped pursuant to U.S.S.G. § 3D1.2(c) and (d). The offense level for the group is **32** pursuant to U.S.S.G. § 2D1.1(c)(5).

With respect to the possession with intent to distribute cocaine base, the base offense level is **14** pursuant to U.S.S.G. § 2D1.1(c)(13). There is a **2-level increase** in the Defendant's offense level pursuant to U.S.S.G. 2D1.1(b)(12) because he maintained a premise for the purpose of distributing a controlled substance.

## GROUPING

9.      Pursuant to U.S.S.G. § 3D1.2(d), all of the drug trafficking counts (both racketeering overt acts and Count Two) group together. Under Section 3D1.3(a), the adjusted offense level is **32** for that group. Additionally, the racketeering murder reasonably foreseeable to the Defendant groups under Section 3D1.2(b). Accordingly, the grouping sections operate in a manner so that only the racketeering murder offense level of **43** is the applicable guideline range.

10.      This Office does not oppose a two-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office will not make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

11.      The parties agree that after accounting for all increases and reductions noted above, **the Defendant's total offense level is 41.**

12.      There is no agreement as to the Defendant's criminal history. Other than that issue, there are no other specific offense characteristics, sentencing guidelines provisions, or potential departures or adjustments set forth in the United States Sentencing Guidelines that will be raised or are in dispute.

## Obligations of the United States Attorney's Office

13.      At the time of sentencing, this Office will recommend a sentence of 300 months. This Office will also move to dismiss any open counts or indictments against the Defendant.

14.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

## Waiver of Appeal

15.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.   The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b.   The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.   Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a) or from appealing from any decision thereunder, should a sentence be imposed that results from arithmetical, technical, or other clear error.

16.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

17.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Rule 11(c)(1)(C) Plea

18.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **300 months incarceration** in the custody of the Federal Bureau of Prisons is the appropriate disposition of this case pursuant to 18 U.S.C. § 3553. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

## Court Not a Party

19.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

20.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

* * * *

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____
David Metcalf
Assistant United States Attorney

*United States v. Terrell Plummer*, Letter to Ned Smock and Shari Derrow                    Page 7 of 8

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual Stipulation and the Advisory Guidelines Stipulation with my attorney, as well as the Sealed Supplement, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11/1/18
Date

Terrell Plummer

I am Mr. Plummer's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

11/1/18
Date

Ned Smoek, Esquire

11/1/18
Date

Shari Derrow, Esquire



FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2018 NOV -5  United States v. Terrell Plummer

Criminal Case No. GLR-17-223
AT BALTIMORE

BY ____ DEPUTY

# ATTACHMENT "A"

The Defendant hereby stipulates and agrees to the following facts with respect to the offense of conviction and all relevant offense level adjustments.

## OFFENSE OF CONVICTION

The Old York Money Gang ("OYMG"), also known as "OYMG" or "O-Block," was a violent urban street gang that operated principally in the Waverly neighborhood in the city of Baltimore, Maryland, and elsewhere in the city of Baltimore.  OYMG was at its essence a neighborhood gang that generally limited membership to persons originating from or inhabiting the Waverly Way neighborhood, although not every member grew up in the neighborhood.

OYMG sustained and promoted its enterprise through criminal activity, including drug trafficking, acts of violence, including murder, robbery, extortion, burglary, and narcotics trafficking.  The gang extensively and frequently endorsed and promoted its existence through the medium of social media accounts and rap music videos, whereby members would display their association and advertise membership and activities of the gang.

OYMG members regularly carried firearms to defend the territory of the gang and would violently expel OYMG rivals or antagonists.  Throughout its existence, a primary source of revenue for the gang was the trafficking of narcotics and marijuana.  Violence was employed to protect and further these and other criminal activities.

The Defendant, Terrell Plummer, a/k/a "Rell," was a member of OYMG during the dates of the racketeering and drug trafficking conspiracies.  The Defendant agreed with members of OYMG to conduct and participate in the gang's affairs through a pattern of racketeering activity that included offenses involving murder and drug distribution.  OYMG was an "enterprise" that affected interstate commerce.

The Defendant agrees that the "Overt Acts" in which he is named in the Third Superseding Indictment represent an accurate sample of his activities in furtherance of the racketeering enterprise.

From 2013 until April 2017, the Defendant distributed heroin, cocaine base, and marihuana as part of the conspiracy.  Instances include February 2, 2016 (cocaine-base), March 23, 2017 (cocaine-base), March 29, 2017 (cocaine-base), and April 26, 2017 (heroin and fentanyl).  In addition, witnesses would recount the Defendant's ongoing narcotics trafficking in OYMG territory throughout the life of the conspiracy.

1

In late July 2014, the Defendant and other OYMG members became embroiled in a dispute with multiple men (the "adversaries") from another neighborhood. On July 30, 2014, these men came to the location of East 36th Street and Old York Road to support a female friend engaged in a dispute with the sister of an OYMG member. In connection with this incident, the Defendant and other OYMG members assaulted the adversaries. During the fracas, Victim #1 was stabbed.

Two days later, the adversaries returned to confront and possibly attack the Defendant and OYMG in response to the assault on July 30, 2014. The three men were driven by a female who drove a white 1999 Mercedes SUV. As the white SUV circled the block of East 36th Street and Old York Road, the Defendant and other OYMG members took notice that this vehicle was the same one driven by the adversaries in the earlier episode.

When the white SUV circled around once more at the intersection of East 36th Street and Old York Road, the Defendant fired multiple gunshots at the vehicle as it traveled north on Old York Road. The Defendant did so in relation to protecting and defending the OYMG neighborhood from the adversaries' incursion. In the course of shooting, one of the bullets grazed one of the adversaries, Victim #1, in the forehead.

Errant bullets fired by the Defendant missed their intended target and struck two additional victims. One victim, Victim #5, was grazed in the chin and wrist. The other victim was a three year old child, McKenzie Elliott, who died as a result of a gunshot wound to her head. The Defendant did not mean to kill McKenzie Elliott. However, the Defendant was responsible for her death insofar as he was trying to shoot the individuals in the white SUV.

The Defendant admits to membership in the racketeering enterprise known as the Old York Money Gang. He admits to agreeing to commit two racketeering acts as part of that membership, including trafficking cocaine base and heroin in connection with that enterprise. Finally, he admits that he shot and killed McKenzie Elliott on August 1, 2014.

I have read this Attachment "A" and carefully reviewed every part of it with my attorney. I understand it, and voluntarily agree and admit to the facts set forth therein are true.

11/1/18
Date

Terrell Plummer

I am Mr. Plummer's attorney. I have carefully reviewed every part of this Attachment "A" with him. He advises me that he understands and accepts its statements of the facts as true. To my knowledge, his decision to admit to the facts stated therein is an informed and voluntary one.

11/1/18
Date

Ned Smock, Esquire

11/1/18
Date

Shari Derrow, Esquire

3